```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
AMERICAN HIGH-INCOME TRUST, THE      : 02 Civ. 2506 (LTS) (JCF)
BOND FUND OF AMERICA, INC., THE      :
INCOME FUND OF AMERICA, INC.,        :
AMERICAN FUNDS INSURANCE SERIES-     :
BOND FUND, AMERICAN FUNDS INSURANCE  :
SERIES-HI YIELD BOND FUND, ANCHOR    :     MEMORANDUM
PATHWAY FUND-HIGH YIELD BOND         :     AND   ORDER
SERIES, CAPITAL GUARDIAN U.S.        :
FIXED-INCOME MASTER FUND, AND        :
CAPITAL GUARDIAN GLOBAL HIGH-YIELD   :
FIXED-INCOME FUND,                   :
                                     :
              Plaintiffs,            :
                                     :
    - against -                      :
                                     :
ALLIEDSIGNAL INC., NATIONSBANC       :
MONTGOMERY SECURITIES LLC,           :
PRUDENTIAL SECURITIES, INC.,         :
JOHNNIE CORDELL BREED, CHARLES J.    :
SPERANZELLA, JR. and TERRY CORDELL   :
as CO-PERSONAL REPRESENTATIVES OF    :
THE ESTATE OF ALLEN K. BREED,        :
DECEASED, and CHARLES J.             :
SPERANZELLA, JR., individually,      :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

    On September 22, 2006, the plaintiffs in this case issued a subpoena ad testificandum to Peter M. Kreindler. Honeywell International Inc. ("Honeywell," formerly AlliedSignal Inc.) and Mr. Kreindler have moved pursuant to Rule 45(c)(3)(A)(iv) of the Federal Rules of Civil Procedure to quash the subpoena and pursuant to Rule 26(c) for a protective order precluding the parties from deposing Mr. Kreindler in this case. Neither Honeywell nor Mr.

1

Kreindler is a party to this action.[1]  For the reasons set forth below, the motion is denied.

Background

The facts underlying this case, as alleged in the Complaint, are set out in a decision by the Honorable Laura Taylor Swain on the defendants' motion to dismiss. American High Income Trust v. AlliedSignal, 329 F. Supp. 2d 534, 538-40 (S.D.N.Y. 2004).  I will state them here only insofar as they are relevant to the motion to quash the subpoena.

In 1997, AlliedSignal Inc. ("AlliedSignal") sold the assets of its Safety Restraints Systems Division ("SRS") to Breed Technologies, Inc. ("Breed"). American High Income Trust, 329 F. Supp. 2d at 538.  At the time of the SRS Acquisition, defendant Johnnie Cordell Breed was Breed's Chief Operating Officer, Charles J. Speranzella was Breed's Executive Vice President of Worldwide Operations and General Counsel, and Allen K. Breed was chair or co-chair of Breed's Board of Directors until March 1998, and subsequently was chair emeritus.[2]  Id.

Having been informed that Breed intended to finance the acquisition of SRS through the sale of bonds, AlliedSignal agreed

---

[1] Although AlliedSignal Inc. was initially named as a defendant in this case, all claims against it have been dismissed.

[2] Johnnie Cordell Breed, Mr. Speranzella, and the estate of Allen K. Breed are referred to collectively as the "Director Defendants."

to provide Breed with financial information about SRS and to give Breed the right to conduct due diligence on SRS. Id. at 538. According to the plaintiffs, this due diligence revealed that AlliedSignal had engaged in "questionable accounting practices or made unsupportable assumptions." Id. at 539. Furthermore, the plaintiffs claim that AlliedSignal hindered the due diligence by withholding information and limiting access to certain operations and financial personnel. Id. at 538.

The SRS Acquisition closed on October 30, 1997, but the Director Defendants allowed AlliedSignal to keep the financial books and records for SRS until June 30, 1998. Id. at 539. "Breed issued press releases and Form 10-Q's in February and March of 1998 that reported earnings and included information on the SRS division, but did not disclose that the financial books and records of SRS were still being kept by AlliedSignal." Id.

Breed, with its underwriter, Nationsbanc, marketed the bond placement through a nationwide road show. On April 7, 1998, during the road show, Mr. Speranzella met with the plaintiffs' investment managers. He did not disclose "the existence of loss contracts" or the fact that AlliedSignal still maintained SRS's financial records. Id. After the road show, a Nationsbanc analyst provided the plaintiffs' investment managers with a financial model of Breed prepared using financial data taken from SRS financial statements given to Breed by AlliedSignal. Id. Nationsbanc did not disclose

either the due dilligence difficulties encountered by Breed or the fact that the financial data underlying the model came from AlliedSignal.  Id.  The investment managers subsequently purchased bonds for the plaintiffs.  Id.

According to the plaintiffs, the investment managers relied in part upon an Offering Memorandum dated April 20, 1998, which was created by Breed, the Director Defendants, Nationsbanc, and Prudential.  Id.  The Offering Memorandum contained financial data and projections regarding the SRS Acquisition and other transactions, including pro forma statements of earnings.  Id.  On March 9, 1999, Breed filed a registration statement (the "Registration Statement") with the Securities and Exchange Commission in connection with an offer to exchange the bonds for registered notes.  The Registration Statement incorporated by reference previously filed financial statements prepared using data obtained from AlliedSignal.  Id.

On August 2, 1999, Breed filed suit against AlliedSignal in Florida state court, claiming that it had been defrauded in connection with the SRS Acquisition.  Id.  After Breed petitioned for bankruptcy in December 2000, the AlliedSignal Recovery Trust, a litigation trust created by the bankruptcy court for the benefit of Breed's unsecured creditors, took over as plaintiff in the lawsuit.  (Memorandum of Law in Support of Motion of Honeywell International Inc. and Peter M. Kreindler to Quash Plaintiffs'

Subpoena Ad Testificandum and for a Protective Order ("Kreindler Memo") at 2).  During the course of discovery in the Florida litigation, the AlliedSignal Recovery Trust took the deposition of Mr. Kreindler, who "represented AlliedSignal during the senior-level negotiations leading up to the SRS transaction, and [] executed the agreement for the sale of SRS to Breed Technologies on behalf of AlliedSignal."  (Kreindler Memo at 6).  Mr. Kreindler also testified at the trial, at which AlliedSignal ultimately prevailed.  (Kreindler Memo at 2-3).

On July 31, 2000, while the Florida litigation was pending, the plaintiffs brought this lawsuit in the District of Delaware, and the case was subsequently transferred to this Court.  On August 10, 2004, Judge Swain granted the defendants' motions to dismiss with respect to all of the plaintiffs' claims except the federal securities claims against the Director Defendants.  On September 22, 2006, the plaintiffs served the subpoena ad testificandum on Mr. Kreindler, and on October 20, 2006, Mr. Kreindler and Honeywell International Inc. filed the instant motion to quash the subpoena and for a protective order.

Discussion

   A. Legal Standard

Under Rule 26(c), the court has discretion to limit discovery even of relevant evidence by making "any order which justice requires to protect a party or person from annoyance, embarassment,

5

oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); see Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003). Rule 45(c) "provides additional protection for non-parties subject to a subpoena by mandating that a court 'quash or modify the subpoena if it . . . subjects [the] person to undue burden.'" Jones, 219 F.R.D. at 74 (quoting Fed. R. Civ. P. 45(c)(3)(A)(iv)) (alteration in original). However, "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." Naftchi v. New York University Medical Center, 172 F.R.D. 130, 132 (S.D.N.Y. 1997); see also Investment Properties International, Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972) (noting that "an order to vacate a notice of taking [of a deposition] is generally regarded as both unusual and unfavorable"); Speadmark, Inc. v. Federated Department Stores, 176 F.R.D. 116, 118 (S.D.N.Y. 1997) ("An order barring a litigant from taking a deposition is most extraordinary relief.").

    B. Relevance

    Honeywell and Mr. Kreindler argue first that Mr. Kreindler should not be deposed because he has no non-privileged personal knowledge relevant to any of the issues that remain in the case. "It is the party seeking [an order barring a deposition] that bears the burden of proving that the proposed deponent has nothing to contribute." Speadmark, Inc., 176 F.R.D. at 118. According to Honeywell and Mr. Kreindler, Mr. Kreindler has nothing to add to

6

this litigation because "[t]he areas of Mr. Kreindler's personal knowledge -- namely, the negotiation and closing of the SRS transaction -- are just the subjects that the Court removed from this case when it granted AlliedSignal's motion to dismiss." (Kreindler Memo at 6-7).

The remaining claims in this litigation involve Section 11 and Section 12(a)(2) of the Securities Act of 1933.[3]  As the Court pointed out in its response to a motion by the Director Defendants for judgment on the pleadings, the plaintiffs "allege numerous material omissions concerning AlliedSignal's post-closing role and its conduct in connection with due diligence."  American High Income Trust v. AlliedSignal, No. 02 Civ. 2506, 2006 WL 838992, at *2 (S.D.N.Y. March 29, 2006).  Mr. Kreindler's knowledge regarding the SRS transaction and the due diligence conducted by Breed is therefore relevant to the issue of what the Director Defendants knew about SRS and whether they failed to disclose information that

---

[3] Section 11 of the Securities Act of 1933 provides, in part, that "[i]n case any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such a security" may sue the underwriters in any court of competent jurisdiction.  15 U.S.C. § 77k.

Section 12(a)(2) provides that any person who "offers or sells a security . . . by means of a prospectus or oral communication" that contains "an untrue statement of material fact or omits to state a material fact necessary in order to make the statements . . . not misleading" shall be liable to the person who purchases the security.  15 U.S.C. § 77l(a)(2).

7

should have been disclosed. Accordingly, the movants have not met their burden of proving that Mr. Kreindler's testimony would not be relevant to any issue in this case.

    C. <u>Undue Burden</u>

Honeywell and Mr. Kreindler also argue that even if Mr. Kreindler's testimony is relevant, his deposition would serve no useful purpose because he has already given extensive testimony in the Florida state court litigation. According to the movants, "all of Mr. Kreindler's non-privileged, personal knowledge about the SRS transaction is set forth in deposition and trial transcripts that are readily accessible" to the plaintiffs. (Kreindler Memo at 8). They claim that subjecting Mr. Kreindler to another deposition would therefore constitute an undue burden.

Honeywell and Mr. Kreindler note that the plaintiffs were among the unsecured creditors of Breed whose interests were represented in the Florida litigation by the AlliedSignal Recovery Trust. They contend that the AlliedSignal Recovery Trust "had the opportunity and the incentive to explore all of Mr. Kreindler's discoverable knowledge about the transaction." (Kreindler Memo at 8). What this contention ignores, of course, is that the legal issues in the Florida litigation were different from the legal issues in this case. In the Florida litigation, Breed (and thereafter the AlliedSignal Recovery Trust) pursued state law fraud and misrepresentation claims against AlliedSignal, while in this

case the plaintiffs have brought federal securities claims against three former directors of Breed.  It is therefore by no means certain that Mr. Kreindler's prior testimony "touches upon every conceivable aspect of his involvement with the SRS transaction," as the movants claim.  (Kreindler Memo at 8).

Furthermore, the Director Defendants have indicated that because the issues in the two cases are different, and because the Director Defendants themselves were not parties in the Florida litigation, they reserve the right to object to the introduction of Mr. Kreindler's prior testimony in this case.  (Letter of Joseph G. Davis dated Nov. 8, 2006).  In order for Mr. Kreindler's prior deposition testimony to be used against the Director Defendants in this case, they must have been "present or represented at the taking of the deposition."  Fed. R. Civ. P. 32(a).  The movants contend that the Director Defendants' interests in defending against the plaintiffs' federal securities claims were represented during the Florida litigation because they held an interest in the AlliedSignal Recovery Trust as a result of their prior ownership of Breed stock.  But the issues in the Florida case were distinct from those raised here, and the Director Defendants must therefore be given the opportunity to question Mr. Kreindler in order for his prior testimony to be admissible in this case.

<u>Conclusion</u>

Honeywell and Mr. Kreindler have thus failed to show that Mr.

Kreindler lacks relevant information or that his deposition would constitute an undue burden. The motion to quash the subpoena and for a protective order is therefore denied.

SO ORDERED.

*[signature: James C. Francis IV]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       December 8, 2006

Copies mailed this date:

Craig S. Primis, Esq.
Zhonette M. Brown, Esq.
Michael F. Williams, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005

Joseph Serino, Jr., Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022

Stuart M. Grant, Esq.
James J. Sabella, Esq.
James P. McEvilly, Esq.
Grant & Eisenhofer, P.A.
45 Rockefeller Center
New York, New York 10111

Joseph G. Davis, Esq.
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006